IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | |
|---|---|
| **MICHAEL D. WILLIAMS,** | ) |
| **Plaintiff,** | ) |
| | ) Civil Action No. 5:19-00159 |
| v. | ) |
| **BRITTANY FOSTER,** | ) |
| **Defendant.** | ) |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is Defendant Foster's "Motion to Dismiss Complaint and Alternative Motion for Summary Judgment" (Document No. 19), filed on November 5, 2020. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendant Foster's Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendant Foster in moving to dismiss. (Document No. 21.) On November 13, 2020 and November 30, 2020, Plaintiff filed his Responses in Opposition. (Document Nos. 22 – 23.) Having examined the record and considered the applicable law, the undersigned has concluded that Defendant Foster's Motion should be granted.

**FACTUAL BACKGROUND**

On March 7, 2019, Plaintiff, acting *pro se*, filed a Complaint seeking relief for alleged violations of his and other inmates' constitutional and civil rights pursuant to 42 U.S.C. § 1983.[1]

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

(Document No. 2.) Plaintiff indicated that he was filing the above action on behalf of himself and as a representative for the following Plaintiffs: (1) Michael D. Ashmore; (2) Cory Adkins; (3) William Cole; (4) Ben Halstead; (5) Jeremy Mayo; and (6) James Allen Clements. (Id.) As Defendants, Plaintiff named the following: (1) WV Divisions of Corrections and Rehabilitation; (2) Prime Care Medical; (3) Britany Foster, Medical Administrator of the Southern Regional Jail; and (4) Mike Francis, Superintendent of the Southern Regional Jail. (Id.) Plaintiff requested monetary relief. (Id.)

By Order entered on March 11, 2019, the undersigned notified Plaintiff that he was precluded from prosecuting claims on behalf of the other named Plaintiffs as it would constitute the unauthorized practice of law and if he wished to proceed with his Section 1983 claim, he should amend his Complaint to exclude Plaintiffs Ashmore, Adkins, Cole, Halstead, Mayo, and Clements as Plaintiffs. (Document No. 4.) On April 5, 2019, Plaintiff filed his Amended Complaint excluding the other named Plaintiffs and naming the following as Defendants: (1) Dr. Rashed; (2) Tom Ballard, II; (3) Michael Francis; (4) Britany Foster; and (5) Nurse Practitioner Zack.[2] (Document No. 5.) First, Plaintiff appears to allege that he has been subjected unconstitutional conditions of his confinement in violation of his rights under the Eighth Amendment. (Id., pp. 5 – 6.) Plaintiff claims that due to "inhumane treatment and housing accommodations," he was required to sleep on the floor next to a toilet. (Id., p. 5.) Plaintiff states that Defendant Francis then directed that Plaintiff be housed in medical segregation for 75 days. (Id.) Plaintiff, however, contends that while in segregation, he was subjected to "24-hour lockdowns" with "at times no

---

[2] Plaintiff is a frequent filer having initiated at least five actions in this Court: Case Nos: 2:19-cv-0067; 2:19-cv-0068; 5:19-cv-00150; 5:19-cv-00151; and 5:19-cv-00159. In his Amended Complaint, Plaintiff acknowledges that Civil Action Nos. 2:19-cv-0068 and 2:19-cv-0069 are currently pending before the Court. Plaintiff further includes a summary of the claims asserted in these two actions. (Document No. 5, pp. 2 – 3.)

2

shower," "at times no recreation," "at times no church," and only one 15-minute phone call per day. (Id.) Plaintiff complains that Defendant Foster "held [him] in medical after he refused to stay locked down 24 hours a day." (Id., p. 6.) Plaintiff further alleges that Defendant Foster housed infectious inmates with Plaintiff. (Id.) Second, Plaintiff alleges that Dr. Rashed committed a battery upon him after becoming "mad" while conducting a medical examination. (Id., p. 9.) Specifically, Plaintiff states that Dr. Rashed "was mad while examining my groin area, grabbed my wrist, and flung it away from my body, crashing it into an otoscope machine." (Id.) Third, Plaintiff asserts that Defendant Zack violated the Health Insurance Portability and Accountability Act ["HIPPA"]. (Id.) Plaintiff explains that Defendant Zack yelled out his medical information in front of six nurses and 15 inmates. (Id.) Finally, Plaintiff alleges that Defendant "Ballard came to investigate Dr. Rashed and Zack for battery and breaking my HIPPA rights to privacy [and] 30 to 60 days he has denied me due process and equal protection of the law." (Id.) As relief, Plaintiff requests compassionate release and monetary damages. (Id., pp. 6 – 7.)

Following screening of the above case pursuant to 28 U.S.C. § 1915A, the undersigned entered his Proposed Findings and Recommendation on June 11, 2019, recommending that Plaintiff's above claims be dismissed. (Document No. 6.) On June 24, 2019, Plaintiff filed Objections. (Document No. 7.) By Memorandum Opinion and Order entered on September 30, 2020, United States District Judge Frank W. Volk adopted in part and rejected in part the undersigned's Proposed Findings and Recommendation. (Document No. 10.) Specifically, District Judge Volk declined to adopt the undersigned's recommendation that Plaintiff had failed to state a cognizable Eighth Amendment claim against Defendant Foster. (Id.) Specifically, District Judge Volk determined Plaintiff stated a cognizable Eighth Amendment claim by alleging that Defendant Foster placed infectious inmates in a cell with Plaintiff despite being aware that Plaintiff was a

"terminally ill inmate with a low immune system." (Id.) District Judge Volk adopted the undersigned's recommendation that Plaintiff's remaining allegations failed to state a cognizable claim. (Id.) The above case was referred back to the undersigned for further proceedings. (Id.)

By Order entered on October 2, 2020, undersigned determined Plaintiff's Amended Complaint stated a colorable claim under Section 1983 against Defendant Foster, granted Plaintiff's Motion to Proceed Without Prepayment of Fees, directed the Clerk to issue process concerning for Defendant Foster. (Document No. 11.) On November 5, 2020, Defendant Foster filed her "Motion to Dismiss Amended Complaint and Alternative Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 19 and 20.) Defendant Foster argues that Plaintiff's claims should be dismissed based on the following: (1) Plaintiff failed to exhaust his administrative remedies (Document No. 20, pp. 3 – 7.); (2) Plaintiff's claims do not meet the legal threshold for a viable Eighth Amendment claim" (Id., pp. 7 – 9.); and (3) Defendant Foster should be awarded summary judgment" (Id., p. 9.). As Exhibits, Defendant Foster attaches a copy of the following: (1) A copy of Plaintiff's "Inmate Request/Grievance" dated April 24, 2019 (Document No. 19-1, p. 1.); (2) A copy of Plaintiff's "Inmate Request/Grievance" dated May 9, 2019 (Id., p. 2.); (3) A copy of Plaintiff's "Inmate Request/Grievance" dated July 4, 2019 (Id., p. 3.); (4) A copy of the Affidavit of Thomas J. Weber, Chief Executive Officer of PrimeCare Medical of West Virginia, Inc. (Document No. 19-2.); and (5) A copy of Plaintiff's pertinent medical records (Document No. 19-3.).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on November 6, 2020, advising him of the right to file a response to the Defendant Foster's Motion. (Document No. 21.) On November 13, 2020 and November 30, 2020, Plaintiff filed his Responses in Opposition. (Document Nos. 22 and 23.) On January 6, 2021, Plaintiff filed

a Sworn Statement of Inmate Joshua Radcliffe. (Document No. 26.)

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 556 U.S. at 679, 129 S.Ct. at 1950. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

This Court is required to liberally construe *pro se* documents, holding them to a less stringent standard than those drafted by attorneys. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (1978). Liberal construction, however, "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Miller v. Jack, 2007 WL 2050409, at * 3 (N.D.W.Va. 2007)(citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978)). Further, liberal construction

does not require the "courts to conjure up questions never squarely presented to them." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. Small v. Endicott, 998 F.2d 411 (7th Cir.1993). Finally, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir.1990)). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

**Summary Judgment**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505,

91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## ANALYSIS

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[3] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[A] court may not excuse a failure to exhaust" because the PLRA's mandatory exhaustion scheme "foreclose[es] judicial discretion." Ross v. Blake, ___ U.S. ___, 136 S.Ct. 1850, 1856-57, 195 L.Ed.2d 117 (2016)("[A] court may not excuse a failure to exhaust, even to take [special circumstances] into

---

[3] 42 U.S.C. § 1997e(a) provides as follows:
>No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

account."). But the plain language of the statute requires that only "available" administrative remedies be exhausted. Id. at 1855("A prisoner need not exhaust remedies if they are not 'available.'") In Ross v. Blake, the Supreme Court set forth three scenarios where the administrative process is considered "unavailable": (1) The administrative process "operates as a simple dead end -- with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) The administrative process is so opaque that no ordinary prisoner can discern or navigate through the process; and (3) The "administrator thwart inmates from taking advantage of a grievance process through machination, misrepresentation or intimidation." Ross, 136 S.Ct. at 1859-60; also see Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

Similar to the PLRA, the West Virginia Prisoner Litigation Reform Act ("WVPLRA") requires an inmate to exhaust the agency's procedures before filing a civil action regarding an ordinary administrative remedy. W.Va. Code § 25-1A-2(c). An "ordinary administrative remedy" is defined as "a formal administrative process by which an inmate submits a grievance seeking redress and presenting concerns regarding any general or particular aspect of prison life which does not involve violence . . . An ordinary administrative remedy includes, but is not limited to, . . . staff treatment or some other alleged wrong." W. Va. Code § 25-1A-2(a). Exhaustion of an ordinary administrative remedy is satisfied upon a showing of the following:

> An ordinary administrative remedy is considered exhausted when the inmate's grievance complies with duly promulgated rules and regulations regarding inmate

grievance procedures, has been accepted, fully appealed and has received a final decision from the Commissioner of Corrections or the Commissioner's designee, or the Executive Director the Regional Jail Authority, or the Director's designee.

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983 or Bivens action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra;

9

Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005), *abrogated on other grounds by* Custis v. Davis, 851 F.3d 358 (4th Cir. 2017). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. Jones v. Bock, supra, 549 U.S. at 216, 127 S.Ct. at 921(Failure to exhaust is an affirmative defense that a defendant must generally plead and prove); also see Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. "A court may sua sponte dismiss a complaint when the alleged facts in the complaint, taken as true, prove that the inmate failed to exhaust his administrative remedies." Custis v. Davis, 851 F.3d. 358, 361 (4th Cir. 2017); also see Banks v. Marquez, 694 Fed. Appx. 159 (4th Cir. 2017)(finding no error in the district court's decision to sua sponte dismiss petitioner's petition where petitioner explicitly admitted in his petition that he failed to exhaust his administrative remedies). Although failure to exhaust available administrative remedies is an affirmative defense, it is a threshold issue that must be resolved before reaching the merits of the underlying claims for relief. Jones v. Bock, supra, 549 U.S. at 216, 127 S.Ct. at 921; Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). Once the defendant has made a threshold showing of failure to exhaust, the burden of showing that the administrative remedies were unavailable falls to plaintiff. See Washington v. Rounds, 223 F.Supp.3d 452, 459 (D.Md. 2016)(citing Graham v. Gentry, 413 Fed.Appx. 660, 663 (4th Cir. 2011)). Whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge." Creel v. Hudson, 2017 WL 4004579, at * 3 (S.D.W.Va. 2017)(citing

10

Drippe v. Tobelinski, 604 F.3d 778, 782 (3rd Cir. 2010)); Lee v. Willey, 789 F.3d 673, 678 (6th Cir. 2015)(finding disputed questions of fact are resolved by the Court); also see Woodhouse v. Duncan, 741 Fed.Appx. 177, 178 (4th Cir. 2018)(citation omitted)("Judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury.") If a plaintiff fails to exhaust his or her administrative remedies under the PLRA or WVPLRA, then the defendant is entitled to judgment as a matter of law. See Legg v. Adkins, 2017 WL 72604, * 2 (S.D.W.Va. Feb. 23, 2017).

West Virginia Division of Corrections Policy Directive 335.00, which was in effect at the time of the incident described in Plaintiff's Complaints, sets forth the administrative remedy process. An inmate initiates the administrative process by filing a grievance.[4] Specifically, an inmate must first file a grievance utilizing a grievance form "within fifteen (15) days of any occurrence that would cause him/her to file a grievance." (Id.) Only one issue or complaint may be grieved per form, and the inmate must submit it to his/her Unit Manager. (Id.) The Unit Manager is required to ensure that an answer to the grievance is provided to the inmate within five days. (Id.) Next, the inmate may appeal the Unit Manager's response "to the Warden/Administrator within five (5) days from delivery of the response to his/her grievance" using the same form submitted to the Unit Manager. (Id.) "The Warden/Administrator shall respond to the appeal . . . within five (5) days." (Id.) Finally, the inmate may appeal the Warden's response "to the Commissioner of the Division of Corrections within five (5) days after he/she receives the Warden/Administrator's response . . . using the same form . . ." (Id.) The Commissioner "shall respond to the appeal, in writing, within fifteen (15) days." (Id.) The administrative process is

---

[4] A "grievance" is defined to "mean the formal process by which an inmate seeks redress over any matter concerning prison life, whether it involves general circumstances or particular episodes." W. Va. Code St. R. § 90-9-4.1.

11

exhausted when the Commissioner responds to the inmate's final appeal. (Id.) The entire process takes about 60 days to complete. (Id.) "If a grievance has not been properly submitted through any level by an inmate, it shall be rejected. A rejected grievance does not exhaust the grievance process or that step of the process." (Id.)

In her Motion, Defendant Foster argues that Plaintiff failed to exhaust his administrative remedies pursuant to the PLRA or the WVPLRA. (Document No. 19 and Document No. 20, pp. 3 – 7.) Defendant Foster asserts that Plaintiff's "failure to exhaust administrative remedies is apparent not only from the face of the complaint, but from the fact that [Plaintiff] was clearly not precluded from using the grievance process by being housed in medical." (Id., pp. 6 – 7.) Defendant Foster notes that the District Court failed to adopted the undersigned's recommendation that Plaintiff's Amended Complaint be dismissed for failure to exhaust because the District Court "found that Mr. William's allegation (as raised in his objections to the Proposed Findings and Recommendation) that he was deliberately moved to medical so he could not use the in-house administrative remedy process raises 'an inference that he was prevented for utilizing the prison's administrative remedies.'" (Id., p. 6.) Defendant Foster, however, notes that Plaintiff "filed at least three grievances, which were responded to by Ms. Foster on April 24, 2019, May 9, 2019, and July 4, 2019." (Id.) Thus, Defendant Foster contends that "the grievance process was available to [Plaintiff] and the failure to exhaust that process was his decision." (Id.) Accordingly, Defendant Foster argues that Plaintiff claims should be dismissed. (Id., p. 7.)

In his Responses, Plaintiff first acknowledges that he "sent Defendant Foster grievances [but] she wouldn't respond to any about the infectious inmates." (Document No. 22, p. 4.) Plaintiff further states that he was attaching copies of "some of the grievances [he] was never allowed to pursue because of article 13 (trash can)." (Id.) Second, Plaintiff argues that the administrative

12

remedy process "was unavailable to him because he was deliberately moved to medical where the only thing that he could file was paper grievances, which were replied to as being filed article 13 (trash can)." (Document No. 23, pp. 2 - 3.) Plaintiff claims he filed "multiple grievances from within the medical housing unit which were not responded to" and "he believes were put in the trash." (Id., p. 3.) Third, Plaintiff argues that Defendant Foster's Exhibits of grievances dated April 24, 2019, May 9, 2019, and July 4, 2019 "bolsters the Plaintiff's claim that he did in fact exhaust his administrative remedies." (Id.) As Exhibits, Plaintiff attached the following: (1) A copy of an "Inmate Request/Grievance" addressed to Chairman Mr. Green dated February 13, 2019 (Document No. 19, p. 5.); (2) A copy of an "Inmate Request/Grievance" addressed to Superintendent Francis dated March 18, 2019 (Id., p. 6.); (3) A copy of an "Inmate Request/Grievance" addressed to Superintendent Francis dated March 21, 2019 (Id., p. 7.); (4) A copy of an "Inmate Request/Grievance" addressed to Superintendent Francis dated March 28, 2019 (Id., p. 8.); (5) A copy of an "Inmate Request/Grievance" addressed to Defendant Foster dated April 24, 2019 (Id., p. 9.); and (6) A copy of an "Inmate Request/Grievance" addressed to Defendant Foster dated May 9, 2019 (Id., pp. 11 - 12.).

      Based upon a review of the record, the undersigned finds that Defendant Foster has met her burden proving that Plaintiff failed to exhaust his administrative remedies concerning the Eighth Amendment claim as asserted in his Amended Complaint. The record is completely void of any evidence that Plaintiff fully exhausted the administrative process. Additionally, the record refutes Plaintiff's claim that the administrative process was rendered unavailable during his placement in the medical unit. Plaintiff alleges that the administrative process was unavailable because he did not have access to electronic kiosk for the purpose of filing a grievance. Plaintiff explained that he was forced to file paper grievances, "which were not responded to" and "he

13

believes were put in the trash." The record, however, refutes Plaintiff's allegations. See Ferguson v. Clarke, 2016 WL 398852, * 6 (W.D.Va. Jan. 6, 2016)(inmate's allegation that the administrative process was unavailable was belied by evidence that inmate submitted other grievances within the same period); Al Mujahidin v. Harouff, 2013 WL 4500446, * 7 (D.S.C. Aug. 21, 2013)(finding that inmate could not avoid summary judgment by simply asserting an unsupported allegation that his grievances were not processed or destroyed, in light of documentary evidence showing that other grievances were processed); McMillian v. N.C. Central Prison, 2013 WL 1146670, * 5 (E.D.N.C. March 19, 2013)(An inmate's allegations that grievances were not accepted by staff, "without providing any details regarding the date the alleged grievances were submitted or to whom they were submitted, are insufficient to refute defendants' arguments in support of their exhaustion defense."), aff'd, 534 Fed.Appx. 221 (4th Cir. 2013); Veloz v. New York, 339 F.Supp.2d 505, 516 (S.D.N.Y. 2004)(finding inmate's unsupported allegation that prison staff had a practice of destroying or misplacing grievances was insufficient to prove unavailability of the grievance procedure). The record clearly reveals that Plaintiff filed grievances during the time period that he was placed in the medical unit, and that Superintendent Francis and Defendant Foster responded to those grievances. (Document No. 19-1 and Document No. 22, pp. 6 - 12.) Specifically, the record reveals that Defendant Foster responded to the grievances filed by Plaintiff on April 24, 2019, May 9, 2019, and July 4, 2019. (Id.) Additionally, Superintendent Francis responded to grievances filed by Plaintiff on March 18, 2019, March 21, 2019, and March 28, 2019. (Document Nos. 22, pp. 6 – 8.) Plaintiff's mere complaint that he was required to use paper grievance forms during his placement in the medical unit does not render the administrative process unavailable. To the extent Plaintiff argues that the grievances containing Defendant Foster's responses proves that Plaintiff fully exhausted his administrative remedies (Document

14

No. 19-1), Plaintiff is incorrect. Assuming Plaintiff was dissatisfied with the response to his grievance, or if the time period for receiving a response had expired, Plaintiff should have proceeded to the next level of the grievance process. Plaintiff, however, failed to proceed any further in the administrative remedy process. Finally, "a prisoner's claim that the grievance system was unavailable to him because he lacked full knowledge of the specifics of the grievance process does not excuse or waive a failure to exhaust administrative remedies." Graham v. County of Gloucester, 668 F.Supp.2d 734, 741 (E.D.Va. 2009)(citing authority from the Third, Sixth, Seventh, Eighth, and Tenth Circuits), aff'd, 413 Fed.Appx. 660 (4th Cir. 2011); also see Gonzalez v. Crawford, 419 Fed.Appx. 522, 523 (5th Cir. 2011)(An inmate's "alleged ignorance of the exhaustion requirement, or the fact that he might have misconstrued the language in the handbook, does not excuse his failure to exhaust."); Napier v. Laurel County, 636 F.3d 218, 221-22 (6th Cir. 2011)(rejecting plaintiff's argument that "administrative remedies were not available to him" because administrators "failed to explain its grievance policy or the PLRA to him"); Twitty v. McCoskey, 226 Fed.Appx. 594, 596 (7th Cir. 2007)("A prisoner's lack of awareness of a grievance procedure . . . does not excuse compliance."); Russell v. Butcher, 2021 WL 1618458, * 5 (S.D.Va. April 26, 2021)(J. Goodwin)(finding that an inmate's "lack of knowledge of grievance procedures does not equate to unavailability"); State v. South Carolina Dept. of Corrections, 2019 WL 3773867, * 6 (D.S.C. Aug. 9, 2019)("Ignorance of the grievance process does not excuse [plaintiff's] failure to exhaust his administrative remedies."); Persinger v. Northern Regional Jail, 2015 WL 4645665 (N.D.W.Va. Aug. 5, 2015)("Lack of knowledge of the grievance process does not excuse compliance with the requirement that a prisoner exhaust his administrative remedies."); Adams v. Southwest Virginia Regional Jail, 2014 WL 3828392, * 3 (W.D.Va. Aug. 4, 2014)(finding that plaintiff's contention that his failure to exhaust should be excused based on his

15

ignorance about the grievance process fails); Goodwin v. Beasley, 2011 WL 835937, * 3 (M.D.N.C. March 3, 2011)("Courts have squarely rejected prisoners' attempts to bypass the exhaustion requirements by merely arguing lack of knowledge about the grievance process."); Smith v. Boyd, 2008 WL 2763841, * 1 (D.S.C. July 11, 2008)("This court cannot waive the exhaustion requirement, which was specifically mandated by Congress, based on Plaintiff's ignorance of the requirement or any perceived futility or inadequacy with the administrative grievance process."). The undersigned, therefore, respectfully recommends that Defendant Foster's Motion be granted and Plaintiff's Amended Complaint be dismissed in view of his failure to exhaust his administrative remedies pursuant to the PLRA and the WVPLRA. The undersigned finds it unnecessary to consider the other reasons that Defendant Foster has submitted for dismissal of Plaintiff's claim.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendant Foster's "Motion to Dismiss Complaint and Alternative Motion for Summary Judgment" (Document No. 19), and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Frank W. Volk. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the

basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Volk and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and counsel of record.

Date: July 2, 2021.

Omar J. Aboulhosn
United States Magistrate Judge